**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHNNY CAMARGO,                         )<br>                                                        )<br>                    Plaintiff,              )<br>                                                        )<br>         vs.                                         )<br>                                                        )<br>PAMELA DEL PORTO, et al.,       )<br>                                                        )<br>                    Defendants.        )<br>_____) | 3:06-CV-0692-HDM (RAM)<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion to Dismiss (Doc. #19). Plaintiff opposed the motion (Doc. #41) and Defendants replied (Doc. #46).

## I. BACKGROUND

### A.   Factual Background

Plaintiff alleges Defendants wrongfully placed and retained him in "segregated close custody housing" on the basis of an alleged gang association, which Defendants determined based on Plaintiff's innocent association with members of his racial group, past cell-mates and a tattoo (Doc. #10 at 4-7). Plaintiff further alleges he wasn't given a hearing or notification of any kind at the time of his initial "STG validation" and was told he had to complete five (5) years in segregated close custody housing write-up free before he would be eligible to advance and/or transfer in the ESP system (Doc. #10 at 5). Plaintiff asserts he filed institutional kites and grievances in order to dispute the STG validation but his complaints went unresolved,

unanswered or were denied (Doc. #10 at 5). Plaintiff further asserts that he did not have any overt acts of misconduct that would enable administration to label him an STG member or associate when initially validated, nor has he had any since that validation (*Id.*). Plaintiff alleges he didn't receive a hearing regarding his STG validation until five (5) years after being initially notified verbally of his alleged gang membership and Defendants didn't serve Plaintiff with NDOC Form 1598, which states he was "validated as an STG", until six (6) months prior to his March 29, 2006 STG hearing (*Id.* at 6).

Plaintiff asserts he is not a gang member or associate and poses no threat to the safety of others or to institutional security (*Id.* at 8). Plaintiff further asserts Defendants have required Plaintiff to "debrief" in order to transfer out of segregated close custody housing; however, Plaintiff refuses to debrief because he is not a gang affiliate, he has no information to divulge and he fears for his safety if he participates in such an interview (*Id.* at 9). Finally, Plaintiff contends Defendants classification process is inherently racist in that Hispanics are presumed to be involved in gangs based on their association with other Hispanics and Defendants deliberately misclassified Plaintiff because he is Hispanic (*Id.* at 10-11).

Plaintiff's First Amended Complaint includes the following causes of action: 1) violation of 42 U.S.C. § 1983; 2) violation of Plaintiff's Eighth and Fourteenth Amendment rights against cruel and unusual punishment by maliciously and sadistically placing and retaining Plaintiff in segregated close custody housing; 3) violation of Plaintiff's Eighth and Fourteenth Amendment rights against cruel and unusual punishment and deliberate indifference to a risk of retaliation by subjecting Plaintiff to a debriefing requirement; 4) violation of Plaintiff's Eighth and Fourteenth Amendment rights against cruel and unusual punishment and deliberate indifference to inhumane conditions of segregated close custody housing; 5) violation of Article 1, Section 6 of the Nevada Constitution against cruel and unusual punishment; 6) violation of Plaintiff's right to association under Article 1, Sections 1, 10 and 19 of the Nevada Constitution; 7) violation of Plaintiff's First Amendment rights to free association and speech; 8) violation of Plaintiff's First and Fourteenth Amendment rights to

associate with members of his own racial group; 9) conspiracy; 10) violation of Plaintiff's Fourteenth Amendment right to equal protection and violation of the International Convention on the Elimination of All Forms of Racial Discrimination; 11) violation of Plaintiff's right to equal protection under Article 1, Section 1 of the Nevada Constitution; 12) violation of Plaintiff's rights to a state-created liberty interest; 13) violation of Plaintiff's Fourteenth Amendment rights to due process; 14) violation of Plaintiff's right to due process under Article 1, Section 8 and 19 of the Nevada Constitution; and 15) failure to lawfully administer, train and supervise (Doc. #10 at 15-21).

Plaintiff requests a declaratory judgment, preliminary and injunctive relief, compensatory damages, punitive damages, costs and reasonable attorney's fees (*Id*. at 22-23).

## B.    **Procedural Background**

In the instant motion, Defendants presented matters outside the pleadings and request the court treat the motion as one for summary judgment (Doc. #19 at 4). A hearing was held on June 28, 2007, in which the instant motion was limited to Defendants' statute of limitations claim (Doc. # 38). Another hearing was held on August 8, 2007, in which Exhibits 8,9,10,11,12,13 and 15 attached to Plaintiff's opposition were stricken (Doc. #44). The court determined Exhibits 1-7 are prison documents of which the court could take judicial notice and Exhibits 14 and 16-25 may be relevant to Plaintiff's continuing violation argument presented in opposition to the instant motion (*Id.*). On August 28, 2007, Defendants submitted AR 446 for the court's in camera review. Plaintiff filed a motion to strike Defendants' documents for in camera review (Doc. #47) and Defendants replied (Doc. #48)[1].

---

[1] Plaintiff contends Defendants' submission of AR 446 that was effective October 13, 1999 is immaterial, scandalous and prejudicial to Plaintiff (Doc. #47 at 2). Defendants argue the October 1999 version of AR 446, as submitted, was the governing regulation at the time of Plaintiff's intake at Northern Nevada Correctional Center on or about May 1, 2001 (Doc. #48 at 4). Defendants further argue that because Plaintiff claims the 2005 version contains procedures not followed in identifying him as an STG member, submission of the 1999 regulation is relevant to illustrate the procedures in effect at the time of Plaintiff's intake (*Id.*). Defendants contend Plaintiff has been on notice of his STG status since May 2001; therefore, the October 1999 version of AR 446 is relevant, material and will not needlessly complicate the trier fact to make unwarranted inferences (*Id.* at 5).

3

This Report and Recommendation considers matters outside the pleadings, including Defendants' Documents for In Camera Review[2]; therefore, the instant motion is treated as a motion for summary judgment in accordance with FED. R. CIV. PRO. 56.

## II. STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

---

[2] This Report and Recommendation considers the October 1999 version of AR 446 because it was the regulation in effect at the time Plaintiff admits being verbally informed of his STG validation (*see* Doc. #10 at 5). Accordingly, Plaintiff's Motion to Strike Defendants' Documents for In Camera Review is hereby **DENIED**.

1    In evaluating the appropriateness of summary judgment, three steps are necessary:
2 (1) determining whether a fact is material; (2) determining whether there is a genuine issue
3 for the trier of fact, as determined by the documents submitted to the court; and (3)
4 considering that evidence in light of the appropriate standard of proof. *Liberty Lobby*, 477
5 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the
6 suit under the governing law will properly preclude the entry of summary judgment; factual
7 disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a
8 complete failure of proof concerning an essential element of the nonmoving party's case, all
9 other facts are rendered immaterial, and the moving party is entitled to judgment as a matter
10 of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut,
11 but an integral part of the federal rules as a whole. *Id*.

## III. DISCUSSION

13    Defendants move for summary judgment, pursuant to FED. R. CIV. P. 12(b)(6), for
14 failure to state a claim upon which relief can be granted (Doc. #19 at 6). Defendants contend
15 Plaintiff's claims are barred by the applicable statute of limitations (*Id*.). Specifically,
16 Defendants argue Plaintiff's § 1983 claims and state law claims have a two-year statute of
17 limitations (*Id*. at 6-7). Defendants contend Plaintiff's entire Complaint is based upon his
18 classification as an STG that took place in May 2001; therefore, Plaintiff had until 2003 at the
19 latest to file his Complaint (*Id*.). Plaintiff filed his initial Complaint in the Seventh Judicial
20 District Court on October 4, 2006 (Doc. #1).

21    Plaintiff argues his Complaint shows Defendants' behavior was a "continuous practice."
22 (Doc. #41 at 3). To support this argument, Plaintiff alleges the following facts:

   1.   On May 1, 2001, Plaintiff arrived at ESP and was placed on Unit 5, Level 4, which Plaintiff asserts is the unit and level all inmates are placed on upon arrival.

2. On May 30, 2001, Defendant Drain verbally informed Plaintiff that he was an STG and, at that time, AR 446 was not available to inmates and Plaintiff had no knowledge of his rights.

3. On June 12, 2001 Plaintiff was advanced to Unit 6, Level 3, despite Defendant Drain's comments about his STG validation, and Plaintiff's STG validation was never mentioned at the classification hearing so he had no reason to file a grievance at that time.

4. On September 29, 2003 Plaintiff received a notice of charges and was found guilty of a rule infraction; therefore, his custody changed to level 5, disciplinary segregation.

5. On March 11, 2004, Plaintiff was transferred to NSP for "medical and an evidentiary hearing" and, while there, Plaintiff completed his disciplinary segregation and was placed in administrative segregation housing, where he was made a unit porter while awaiting transfer back to ESP.

6. On July 20, 2004, Plaintiff was transferred back to ESP and placed on Unit 6, Level 4, which was eventually locked down indefinitely and ran identical to administrative segregation, although still called general population.

7. On April 11, 2005, after becoming aware that he was not going to be advanced in the system like other inmates, Plaintiff filed a grievance challenging AR 446.

8. On June 23, 2005, Plaintiff's grievance was concluded.

9. On September 22, 2005, Plaintiff was served with NDOC Form 1598 notifying him of his STG validation.

6

|   |   |   |   |
|---|---|---|---|
| 1 | | 10. | On March 24, 2006, Plaintiff was served with an STG hearing notice. |
| 3 | | 11. | On March 29, 2006, Plaintiff received his STG hearing and his STG validation was upheld. |

(Doc. #41 at 3-8). Plaintiff also asserts that during this time period he never received his "full classification reviews" as required under IP 5.01 and he was never aware of any wrongs or legal avenues and/or limitations that living with an inmate classified as an STG would subject him to classification as an STG (*Id.* at 4). Plaintiff further asserts that once he understood he would not be advancing, he initiated the grievance process (*Id.*).

Defendants reply that the statute of limitations is calculated from the date the injury is alleged for which relief is sought and, in the alternative, courts may apply the discovery rule tolling the applicable statute of limitations until Plaintiff reasonably discovered or should have reasonable discovered the facts supporting his claim (Doc. #46 at 3-4). Defendants argue, however, that the statute of limitation should not be tolled under the discovery rule for the following reasons: Plaintiff's STG status was established as of May 2001 and, at such time, Plaintiff was duly notified of such by his caseworker; the conditions of Plaintiff's confinement were clearly evident as of May 2001, therefore, he should have been aware of the facts necessary to support his claims at that time; in the event Plaintiff's claims are based upon his placement in CCH as of September 2003 where he assaulted another inmate, Plaintiff's claims would still be time-barred; Plaintiff admitted having knowledge of his STG status as of May 2001, therefore, Plaintiff's argument that he only became aware of his STG status upon receipt of documentary notice on September 22, 2005 lacks merit; and, AR 446 is silent as to any written documentation requirement and under the regulation in effect at the time of Plaintiff's initial STG classification there was no requirement that an inmate be provided with a copy of the validation (*Id.* at 4.). Defendants also reply that the continuing violation theory is inapplicable to Plaintiff's claims because Plaintiff cannot show a series of acts or a systematic policy or practice by Defendants that caused his alleged injuries (*Id.* at 5). Finally, Defendants

reply that Plaintiff is not entitled to equitable tolling of the statute of limitations because Plaintiff's earliest grievance filed regarding his STG classification was in August 2003, which is outside the statute of limitations (Doc. #46 at 5). Defendants contend the fact that Plaintiff neither initiated a civil suit nor filed any grievances prior to the expiration of his time to file the instant suit shows Plaintiff is not entitled to equitable tolling (*Id.*). Thus, Plaintiff's lack of diligence in timely filing the instant suit and the resulting prejudice to Defendants in defending against the suit at this late juncture are sufficient to warrant dismissal of Plaintiff's Complaint (*Id.* at 6).

## **Statute of Limitations**

Section 1983 does not contain its own statute of limitations; therefore, the federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state. *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985). If there are multiple statutes of limitation for various types of personal injury claims, the residual statute of limitations for personal injury claims is to be applied. *Owens v. Okure*, 488 U.S. 235 (1989). If there is no residual statute of limitations for personal injury claims, the general residual statute of limitations applies. *Id.*

In Nevada, the applicable residual statute of limitations for personal injury claims applicable to § 1983 claims is two years. NEV. REV. STAT. § 11.190(4)(e). Therefore, under the applicable statute of limitations, Plaintiff had two years within which to commence the instant suit. *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989). An action is deemed to be commenced when the complaint is filed. *Id.* Thus, Plaintiff must show either: 1) that Defendants' last acts alleged to have caused Plaintiff's injuries occurred within two years of filing his Complaint; or 2) that Plaintiff can invoke an exception to the statute of limitations.

Plaintiff essentially asserts three defenses to Defendants' statute of limitations argument: 1) Plaintiff discovered the alleged violations within the applicable statute of limitations; 2) Defendants' actions constitute a continuing violation; and 3) Plaintiff is entitled to equitable tolling (Doc. #41 at 8-10).

1. **Discovery Rule**

While the federal courts borrow the forum state's statute of limitations for § 1983 claims, the courts "borrow no more than necessary." *Two Rivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (*citing West v. Conrail*, 481 U.S. 35, 39-40 (1987)). Thus, federal law, not state law, determines when a civil rights claim accrues. *Id.* Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1999). Plaintiff alleges he was injured due to Defendants' wrongful STG validation and wrongful placement and retention in segregated close custody housing based on that validation (Doc. #10 at 4). Therefore, the question to ask is when did Plaintiff know or have reason to know of that injury.

Plaintiff asserts the discovery rule applies because he was not served with STG notice until September 22, 2005 and he did not become aware of the evidence being used to validate him as an STG until the March 29, 2006 hearing (Doc. #41 at 9). Plaintiff contends it would have been futile to pursue and file a civil lawsuit at that time with the possibility of his STG status changing and not knowing what evidence and information to challenge (*Id.*). Plaintiff further contends that he had to exhaust his administrative remedies and his April 11, 2005 grievance stayed any continuing action once he received notice (*Id.*).

Plaintiff relies on AR 446 to support his argument that he was given improper notice and due to the improper notice he was not aware of his rights to due process (*Id.*). AR 446 in effect at the time of Plaintiff's initial validation provided for identification of STG members during the initial intake process and outlined the procedures to be following in order to validate an inmate. AR 446 at 2-3 (October 14, 1999). AR 446 did not require written notice. Furthermore, in the event AR 446 did require some form of proper notice to meet Due Process standards, the discovery rule does not require proper notice under Due Process standards in order to impute knowledge to Plaintiff of the injury forming the basis of this action. The discovery rule merely requires Plaintiff know or have reason to know of the injury that forms

the basis of this action. Plaintiff admits in his Complaint that "[s]hortly after Camargo's arrival at ESP he was informed, by then Caseworker Defendant Mark Drain, that he (Camargo) had been labeled as a prison gang member (STG Validated) and would remain in close custody housing-indefinitely." (*Id.* at 5). Thus, Plaintiff had knowledge shortly upon arrival in May 2001 that he was classified as an STG member and he had knowledge that he was being placed and would be retained in segregated close custody housing based on that classification. Accordingly, under the discovery rule, Plaintiff's claims began to accrue in 2001 and are, therefore, time-barred.

**2.     Continuing Violation Doctrine**

"In order for a violation to be continuing, it must involve a practice, continued over a period of time, which operates to injure the plaintiff either individually or as a member of a class to which the plaintiff belongs." *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1443 (9th Cir. 1984) (*citing Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924-925, n.3 (9th Cir.), *cert denied,* 459 U.S. 971 (1982); *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 760 (9th Cir. 1980); *Elliot v. Sperry Rand Corp.*, 79 F.R.D. 580, 585-586 (D. Minn. 1978)).

> A consequence of the continuing violations doctrine is that a defendant cannot insulate itself from liability by engaging in a series of related violations ... asserting that the statute of limitations has run for all violations as soon as the limitations period has run for the first violation in the series. This consequence suggests that an important purpose of the continuing violation doctrine is to prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort.

*O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000).

The Ninth Circuit recognizes two methods by which a plaintiff may establish a continuing violation. *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997). First, the plaintiff may show a series of violations by pointing to a series of related acts against one individual, of which at least one falls within the relevant period of limitations. *Id.* Second, a plaintiff may show a "systematic policy or practice of discrimination that operated, in part,

10

within the limitations period-a systemic violation." *Morgan v. Nat'l RR Passenger Corp.*, 232 F.3d 1008 (9th Cir. 2000).

Plaintiff alleges both a series of related acts against him and a systematic policy or practice of discrimination (Doc. #41 at 10-11).

1.  Series of Related Acts Against Plaintiff

In order to establish a series of related acts, Plaintiff "must state facts sufficient to support a determination that the alleged discriminatory acts are related closely enough to constitute a continuing violation and that one or more of the acts falls within the limitation period." *Degrassi v. City of Glendora*, 207 F.3d 636, 645 (9th Cir. 2000) (internal quotations and citations omitted). "The focus in determining whether an alleged civil rights violation is "continuing" is upon the issue of whether a present violation still exists, not upon the present effect of a past ... decision." *London v. Coopers & Lybrand*, 644 F.2d 811, 816 (9th Cir. 1981); *see also*, *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977). The mere continuing impact from a past violation is not actionable. *Grimes v. City and County of San Francisco*, 951 F.2d 236, 238-239 (9th Cir. 1991). "The proper focus is upon the time of the discriminatory [or wrongful] acts, not upon the time at which the consequences of the acts became most painful." *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979).

Here, there is but one act giving rise to Plaintiff's claims – his classification as an STG and the results of that classification. Plaintiff does not allege, and the record does not indicate, that Plaintiff was ever reclassified once being validated as an STG in 2001. In fact, Plaintiff admits that "[a]t all relevant times mentioned herein, defendants have required Carmargo to debrief or remain in segregated close custody housing indefinitely." (Doc. #10 at 9). Plaintiff admits he refuses to debrief (*Id.*). AR 446, effective June 7, 2004, provides for referral to a Full Classification Committee only when an inmate expresses an interest in debriefing and having the STG designation removed. AR 446.02 (June 7, 2004). Plaintiff admits not complying with the debriefing requirement; therefore, Plaintiff's STG status has

11

been continuous since 2001. Although Plaintiff contends that he was advanced to a different unit at one point and transferred to NSP then back to ESP at another point, those actions did not alter his STG status and Plaintiff admits his validation was not mentioned when he was advanced to another level (Doc. #41 at 6). While the record indicates Plaintiff filed numerous grievances regarding his STG status, the denial of those grievances do not constitute new acts, rather they are consequences of the initial STG validation (*See* Doc. #41 at Exhs. 16-25).

Ninth Circuit case law supports the determination that Plaintiff's claims do not involve a continuing violation under a series of related acts theory, but are merely consequences of one act. In *Knox v. Davis*, 260 F.3d 1009 (9th Cir. 2001), Knox, an attorney who represented inmates, received a letter on November 18, 1994 from the warden indicating her personal and legal visitation privileges were suspended pending an investigation. Then, on January 18, 1995, Knox's personal visitation privileges were reinstated, but her legal visitation privileges remained suspended. Knox's attorney rights, both visiting and mail privileges, were permanently suspended on September 26, 1995 and then later modified, on July 30, 1996, allowing limited attorney-client visitation and mail rights. No further modifications took place after this date. Knox filed suit on July 21, 1997, which was ultimately dismissed on April 6, 1998. Knox appealed. In her appeal, Knox argued that, although her claims accrued on January 20, 1996 (when she received a letter formally withdrawing her legal mail and visitation privileges), each time she was denied access to a client a new cause of action arose under the continuing violation theory. *Knox*, 260 F.3d at 1013. The Ninth Circuit found the continuing violation doctrine inapplicable because Knox failed to establish a new violation and that, instead, the repeated denials of her privileges were merely the continuing effect of the original suspension. *Id*. Knox also argued the favorable modification of the ban, allowing her limited and restricted attorney-client visitation and mail rights, created a new accrual date bringing her suit within the statue of limitations period. *Id*. at 1015. However, the Ninth Circuit found this argument also lacked merit. *Id*.

12

Although the facts are distinguishable, the Ninth Circuit's holding in *Knox* is applicable to Plaintiff's claims. Plaintiff was informed of his STG validation in 2001. Plaintiff's grievances filed in regards to his STG validation do not constitute new violations, but are merely a continuing effect of the original validation. And the favorable modification to Plaintiff's unit and level did not create a new accrual date, nor did the service of Form 1598. Although Plaintiff contends the claims in his Complaint "surround the violations that took place before, during and after his STG hearing", (Doc. #41 at 10), the fact remains that Plaintiff was validated as an STG only once and those alleged "violations" are merely the consequences of that validation.

Under these facts, the single act of validating Plaintiff as an STG begins the running of the statute of limitations and the natural effects of the alleged wrongful act are not regarded as "continuing." *See London v. Coopers & Lybrand*, 644 F.2d 811, 816 (9th Cir. 1981).

2.   Systematic Policy or Practice of Discrimination

In order to attack Defendants' policy or practice as systematically discriminatory, Plaintiff must show "execution of a government's policy or custom ... [that] inflicts the injury." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). In the Ninth Circuit, decisions applying the systematic policy or practice method of demonstrating a continuing violation have largely arisen in the context of placement or promotion discrimination cases. *See Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1480 (9th Cir.1989); *Morgan,* 232 F.3d at 1016. The Ninth Circuit has found that "[a] systemic violation claim 'requires no identifiable act of discrimination in the limitations period, and refers to general practices or policies, such as hiring, promotion, training and compensation.' *Provencher v. CVS Pharmacy, Div. Of Melville Corp.,* 145 F.3d 5, 14 (1st Cir.1998). 'In other words, if both discrimination and injury are ongoing, the limitations clock does not begin to tick until the invidious conduct ends.' *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 183 (1st Cir.1989)." *Douglas v. California Dept. of Youth Authority,* 271 F.3d 812, 822 (9th Cir. 2001). Thus, the

critical issue is whether, in this case, Plaintiff has introduced facts, which if viewed in the light most favorable to him, raise material questions about whether he was "exposed" to Defendants' discriminatory policy during the period of limitations. *Id.* at 824.

Plaintiff alleges a policy of continuing discriminatory practices (Doc. #10 at 10). Specifically, Plaintiff alleges Hispanics are automatically placed in segregated close custody housing upon arrival and retained there indefinitely until they debrief (*Id.*). Plaintiff alleges Defendants' classification process is inherently racist because Hispanics are presumed to be involved in gangs based on their association with other Hispanics and Defendants employ a lower standard in determining Hispanics are gang associates than that used for other racial groups (Doc. #10 at 10). On the other hand, Defendants assert Plaintiff was classified as an STG member based on Plaintiff's own admission to gang membership, his gang tattoos, and his history of gang affiliation (Doc. #46 at 5). While Plaintiff disputes Defendants' assertions, he has failed to present specific examples of discrimination that are not related to his individual claims, but that are instead evidence of a policy of discrimination. *Gutowsky*, 108 F.3d at 260.

Plaintiff admits that he was seen by the Classification Committee on June 12, 2001 and advanced to another level (Doc. #41 at 6). It wasn't until September 29, 2003, more than two years later, that Plaintiff's custody changed for disciplinary reasons (apparently unrelated to his STG status), which Plaintiff admits "nullified any advancement rights" due to being found guilty of a rule infraction (*Id.* at 7). Plaintiff was transferred to NSP on March 11, 2004, then back to ESP on July 24, 2004 and placed in Unit 6 (*Id.*). Then, according to Plaintiff, Units 5, 6 and 7 were locked down indefinitely and sometime later he realized he would not be advanced like other inmates in the system (*Id.*). Plaintiff asserts he then began the grievance process challenging AR 446 on April 11, 2005 and was served with NDOC Form 1598 on September 22, 2005 (Doc. #41 at 7). The current version of AR 446, in effect at the time of Plaintiff's grievance, mandates debriefing before Plaintiff's STG designation can be removed.

14

AR 446.02. Plaintiff admits being informed he would have to debrief in order to be reclassified and that he has repeatedly refused (Doc. #10 at 9).

These facts, as pled by Plaintiff, fail to show a systematic policy or practice of discrimination. Plaintiff makes conclusory allegations that, based on Defendants' systematic policy or practice of discrimination, Plaintiff was validated an STG merely because he is Hispanic; however, Plaintiff has not pled sufficient facts to support these allegations. Furthermore, mere "conlcusory allegations" are insufficient to defeat a motion for summary judgment. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004). Accordingly, Plaintiff's claims do not fall under the continuing violation doctrine and are, therefore, time-barred.

### 3.   **Equitable Tolling**

Where the federal courts borrow the state statute of limitations, they also borrow the forum state's tolling rules. *See* Hardin v. Straub, 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); *Board of Regents of the Univ. of New York v. Tomanio,* 446 U.S. 478, 483-84, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). The Nevada Supreme Court recognizes the doctrine of equitable tolling and notes there are several factors the court should consider in determining whether the doctrine should apply in a given case. *Seino v. Employers Ins. Co. of Nevada*, 121 Nev. 146, 111 P.3d 1107 (2005); *Copeland v. Desert Inn Hotel*, 99 Nev. 823, 826, 673 P.2d 490, 492 (1983). "Those factors include: the diligence of the claimant; the claimant's knowledge of the relevant facts; the claimant's reliance on authoritative statements by the administrative agency that misled the claimant about the nature of the claimant's rights; any deception or false assurances on the part of the employer against whom the claim is made; the prejudice to the employer that would actually result from delay during the time that the limitations period is tolled; and any other equitable considerations appropriate in the particular case." *Copeland*, 99 Nev. at 826-827.

Plaintiff asserts the statute of limitations should be equitably tolled because Defendants will not suffer any prejudice where they have already been sued and numerous grievances have

15

been filed by several inmates (Doc. #41 at 10-11). Defendants argue Plaintiff is not entitled to equitable tolling because his earliest grievance was filed outside the statute of limitations; Plaintiff did not initiate a civil suit or file any grievances prior to the expiration of his time to file; there was neither a pending administrative claim nor separate civil suit pending while the statute ran; Plaintiff failed to indicate any reliance on misleading information regarding his rights or deception by Defendants; and, Plaintiff's lack of diligence and resulting prejudice to Defendants warrant dismissal (Doc. #46 at 5-6).

In weighing the factors the Nevada Supreme Court considers, Plaintiff has not shown his claims should be equitably tolled. The record indicates Plaintiff was not diligent in pursuing his claims, as Plaintiff was aware of his STG status since May 2001 and disputed that status from the outset and the record shows Plaintiff filed his first grievance regarding his STG validation in August 2003, more than two (2) years after learning of the validation (Doc. #41, Exh. 23). Furthermore, Plaintiff admits having knowledge of his STG status in 2001, as discussed more fully above, and Plaintiff has not alleged, nor shown, any deception or false assurances on the part of Defendants regarding his STG status. To the contrary, Plaintiff admits that shortly after arrival to ESP in 2001, he was informed of his status and told that his status was indefinite (Doc. #10 at 5). Plaintiff also admits he was informed that he could not advance or transfer based on his STG status until he has five years "write-up free." (*Id.*). Finally, Defendants assert they would be prejudiced by Plaintiff's claims, although they do not provide specific details of how they will be prejudiced other than having to defend against the instant suit in this late juncture (Doc. #46 at 6). After carefully considering each of these factors, it is evident that Plaintiff has not pled sufficient facts to warrant equitable tolling. Accordingly, under the doctrine of equitable tolling, Plaintiff's claims are time-barred.

## IV. CONCLUSION

There are no genuine issues of material fact as to when Plaintiff's claims began to accrue and the filing of Plaintiff's Complaint falls outside the applicable two-year statute of

16

limitations. Because Plaintiff has failed to plead sufficient facts to justify filing the instant action outside the statute of limitations, Defendants' Motion to Dismiss, treated as a motion for summary judgment pursuant to FED. R. CIV. P. 56(c), should be **GRANTED**.

## **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion to Dismiss (Doc. #19).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: December 21, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

17